# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRISTIAN NUNEZ, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>SUBARU OF AMERICA, INC.,<br>TOYOTA MOTOR SALES, U.S.A., INC. and<br>TOYOTA MOTOR ENGINEERING &<br>MANUFACTURING NORTH AMERICA, INC.<br><br>     Defendants. | Civil Action No.___1:19-cv-18303___<br><br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

The allegations contained in this Complaint are based on Plaintiff's personal knowledge as to Plaintiff's own conduct and on information and belief as to all other matters based on an investigation by Plaintiff's Counsel:

## I.        STATEMENT OF THE CASE

1.        Plaintiff Cristian Nunez brings this class action against Defendant Subaru of America, Inc. ("Subaru") and Defendants Toyota Motor Sales, U.S.A., Inc. ("TMS") and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively the "Toyota Defendants" or "Toyota" and collectively with Subaru, the "Defendants") because the Defendants jointly developed, manufactured and sold approximately 165,000 vehicles with a significant safety defect leading to engine stalling, and after concealing this fact for years, are now directing consumers to have recall work performed which Defendants

1

represent will remedy the defect, but in reality, is worsening the stalling and other safety hazards and is causing widespread and catastrophic engine failures.

2.        Plaintiff demands that Defendants accept responsibility for the engine failures resulting from the recall work and make the consumers whole.

3.        Plaintiff brings his claims individually and on behalf of all persons or entities in the United States and/or Texas who own(ed) or lease(d) a 2013 Subaru BRZ or 2013 Toyota Scion FR-S, 2013 Subaru XV Crosstrek or 2012-14 Subaru Impreza, subject to NHTSA Recall No. 18V-772 (the "Class Vehicles").

4.        The Class Vehicles pose an imminent and significant safety hazard to vehicle operators and the public.  Amongst the engine stallings and catastrophic failures, there are reports of fires erupting in the engines after the Recall Work (defined below) was performed, as reported and depicted in the photograph below:



5.        The Defendants have admitted that the valve springs in the engines of the

2

Class Vehicles are defective and may fracture, causing the engine to malfunction, and "result in the engine stalling during driving and the inability to restart the vehicle." *See* Subaru Product Campaign Bulletin WTY-84R and Toyota Safety Recall J02, attached hereto as **Exhibits A and B**, respectively.

6.        Defendants concede that the defective valve springs can "increase the risk of a crash" as a result of the engines malfunctioning and stalling. *Id*.   Amongst the information Defendants have provided to their agents and authorized dealers, is the following diagram of the valve springs and information about the defect:



7.        Defendants have been on notice of this defect in the Class Vehicles for years but concealed their knowledge from the public and remained silent until the failure rate reached such a level that an immediate safety recall was necessary.

8.        On or about November 1, 2018, Subaru filed a "Safety Recall Report" ("Safety Report") with the National Highway Traffic Safety Administration ("NHTSA") concerning the valve spring defect in the Class Vehicles.   In this Safety Report, Subaru represented that it was the manufacturer of all of the Class Vehicles.

9.      In conjunction with the Safety Report, Subaru filed a "Chronology of Defect/Noncompliance Determination" in which it admitted that it first received notice of a potential defect in the valve spring prior to May 2013 when it received a technical report from the Japan market of a valve spring failure.   Additional reports of engine failures and inspections of engines led Subaru to conclude that the valve springs in the Class Vehicles were defective both in design and manufacture.

10.     Toyota owns a significant share of Subaru and thus the two companies have a close working relationship.   The Defendants jointly developed the Subaru BRZ and the Toyota Scion FR-S.  Upon information and belief, Subaru was responsible for developing the engine used in all of the Class Vehicles and for investigating the reports of failures.

11.     Beginning in or around December 2018, Defendants instructed owners of the Class Vehicles to contact Subaru or Toyota dealers immediately in order to have the valve springs replaced (the "Recall Work").  *See* Ex. A (instructing Subaru owners to "immediately contact your Subaru retailer (dealer) for an appointment to have this important repair performed"), Ex. B (instructing Toyota owners to contact a dealer "to have the remedy performed as soon as possible") (collectively, the "Safety Recall Notices").

12.     Defendants guaranteed and warranted by way of the Safety Recall Notices and other public announcements that pursuant to the Recall Work the defective condition and hazards posed by the Class Vehicles would be remedied and all valve springs would be replaced free of charge with "new ones of an improved design." *See* Ex. A and B.

13.     Plaintiff and putative class members have brought their Class Vehicles to Defendants' authorized agents for Recall Work in reasonable reliance upon Defendants' promises to repair their vehicles and eliminate the safety hazard.

14.     Unfortunately, and upon information and belief, the Recall Work is not

remedying the hazard, but instead, is *increasing* the risk of valve spring and/or other engine malfunction, is causing catastrophic engine damage to the Class Vehicles and is *increasing* the risk of vehicle crashes caused by vehicles suddenly stalling while being driven.

15.    Engine failures after the Recall Work is performed are widespread and have been brought to the Defendants' attention.  Inexplicably, Defendants are trying to force consumers to bear the costs and expenses associated with the failures resulting from the Recall Work.

16.    In addition to having their safety and that of the public put at risk, the owners of Class Vehicles are incurring substantial monetary losses because Defendants are refusing to acknowledge full liability for the faulty Recall Work or to reimburse vehicle owners for the engine damages and other losses resulting from the Recall Work.

17.    Plaintiff and numerous putative class members have complained to Defendants but Defendants have refused to accept liability, thereby necessitating the filing of this class action.

18.    Plaintiff and Class members assert claims for breach of express warranties, breach of implied warranties, negligence, negligent misrepresentation and detrimental reliance.

19.    As a direct result of Defendants' wrongful conduct, Plaintiff and class members have been harmed and have suffered actual damages, including repair and replacement costs, loss of use of their Class Vehicles, loss of the benefit of their bargain, and costs and lost time associated with bringing in their Class Vehicles for diagnosis and repair.

## II.        JURISDICTION AND VENUE

20.    This Court has original diversity jurisdiction, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because Plaintiff and many members of the

Class are citizens of states different from Defendants' home states, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class and Classes.

21.    This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District; Subaru has its headquarters in this District; upon information and belief, significant conduct involving Defendants giving rise to the Complaint took place in this District; and some of Plaintiff's claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state; and at or about the time of such injuries, Defendants were engaged  in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

22.    Venue is proper in this District, under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Defendants have caused harm to Class members residing in this District, Defendants regularly conduct business in this District, and because Defendants are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this District.

23.    Furthermore, Defendants have marketed, advertised, sold, and leased the Class Vehicles within this District and upon information and belief have issued Safety Recall Notices for the Class Vehicles to persons in this District and directed, supervised and/or performed Recall Work in this District.

6

### III.        PARTIES

24.        Plaintiff Cristian Nunez is a citizen and resident of the state of Texas.  On or around October 11, 2017, Plaintiff purchased a new 2013 Toyota Scion FR-S from Lone Star Toyota in Lewisville, Texas for personal, family, or household purposes.

25.        Defendant Subaru is a New Jersey corporation with headquarters in Camden, New Jersey.  Subaru is the automobile manufacturing division of the Japanese conglomerate Subaru Corporation.

26.        Subaru has a nationwide dealership network and operates offices and facilities throughout the United States.

27.        Upon information and belief, Subaru designed the engine in Plaintiff's Class Vehicle and manufactured the vehicle in a Subaru facility in Japan.

28.        Defendant TMS is a California corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024. TMS manages and supports a Dealer network located throughout the state of New Jersey and the United States.

29.        TMS is the authorized importer and distributor of Toyota motor vehicles in the United States. TMS is responsible for advertising, marketing, and selling the Class Vehicles. At all relevant times, TMS acted through its authorized employees, agents, and its Distributor and Dealer networks in performing activities associated with issuing the Safety Recall Notice and conducting and/or overseeing the conducting of the Recall Work, including but not limited providing warranty information, disseminating technical information and mechanic training materials to Dealers, and monitoring the performance of Class Vehicles in the United States.

30.        Defendant TEMA is a Kentucky corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas 75024.

31.    TEMA is the automobile engineering, manufacturing, research, and design concern in North America for Toyota motor vehicles. TEMA designs, develops, tests, manufactures, assembles, and evaluates Toyota motor vehicles in the United States. TEMA also develops parts for North American Toyota vehicles. TEMA operates factories which manufacture Toyota vehicles and operates research and development facilities.

32.    Upon information and belief, Subaru, TMS and TEMA were all involved with investigating the valve spring defect in the Class Vehicles, issuing the Safety Recall Notice and/or training, directing and/or instructing authorized agents to perform the Recall Work.

**IV.        FACTS**

33.    Plaintiff Cristian Nunez purchased his Class Vehicle from Lone Star Toyota, which is a Toyota authorized Dealer.  Plaintiff continues to own the 2013 Toyota Scion. When Plaintiff purchased his Class Vehicle, he was unaware his Class Vehicle contained defective valve springs.

34.    In or around August 20, 2019, Plaintiff received the "Safety Recall Notice" issued by Toyota, in substantially the form included in Exhibit B.

35.    As a result of the notice from Toyota, on or about August 26, 2019, Plaintiff took his car to Lone Star Toyota, a Toyota authorized dealer in Lewisville, Texas for the Recall Work.

36.    Approximately a week later, on or about September 1, 2019, Plaintiff was driving his car on a highway when he heard a loud knocking sound coming from the engine. The vehicle's engine then immediately shut down, stranding Plaintiff on the side of the road.

37.    Because this issue occurred on the Sunday of Labor Day weekend, Plaintiff was forced to wait until Tuesday, September 3, 2019, to have his vehicle towed to the service department at Lone Star Toyota.

38.      Upon presenting his car to the dealership, the engine of Plaintiff's vehicle was opened and inspected by service technicians at Lone Star Toyota.

39.      The technicians informed Plaintiff that they found metal shavings inside the engine, including in the engine oil, and that these metal shavings caused a bearing failure inside the engine.  This is consistent with the engine failures reported by other Class members after having the Recall Work performed.

40.      Various service department employees, including a service advisor identified as Robert McMillan, speculated that Plaintiff "must have caused these issues when performing prior engine work himself."  This was in spite of the fact that (1) Plaintiff informed the technicians that he did not, and had not, performed any work on his own vehicle; and (2) these metal shavings were not present when the same dealership performed the Recall Work on Plaintiff's car one week prior to these events.

41.      Plaintiff was informed by Lone Star Toyota that his vehicle needed an entirely new engine, and that the cost of the engine would be approximately six thousand five hundred dollars ($6,500.00), which cost would be entirely borne by Plaintiff.

42.      Despite his initial decision to blame Plaintiff for the issues with his car, McMillan agreed to keep Plaintiff's vehicle at the dealership, issue Plaintiff a loaner vehicle, and inquire as to whether Toyota would cover some or all of the cost of the necessary engine replacement.

43.      After a considerable period of time had lapsed without any response from Toyota and/or the dealership, on or about September 11, 2019, Plaintiff was contacted by the dealership and informed that Toyota had refused to cover any of the cost of the repairs to Plaintiff's vehicle.  Moreover, Plaintiff was informed that he was required to either (1) agree to a $1,500.00 charge to have a representative of Toyota travel to the dealership to inspect the

vehicle firsthand; or (2) pay to have the vehicle towed from the dealership's premises, and immediately return the loaner vehicle that Plaintiff had been using to travel to work, and for other necessary personal travel. The dealership also required that Plaintiff pay for the use of the loaner vehicle during the time period in which his car was being evaluated by the dealership and Toyota.

44.    Plaintiff was and is not in a position to pay the amounts demanded by Toyota, and has therefore been left without a working automobile.

45.    Plaintiff did not cause the engine failure in his vehicle and did not self-perform any maintenance work on his vehicle before or after the Recall Work was performed.

46.    When Plaintiff and Class members purchased or leased their Class Vehicles, they relied on the reasonable expectation that the Class Vehicles would be equipped with valve springs that were free from defects, safe to operate, and would not pose a threat to their health or safety. In fact, Defendants have always emphasized the quality and reliability of the Class Vehicles, knowing that consumers, including Plaintiff and Class members, rely upon such representations when purchasing or leasing vehicles.

47.    When Plaintiff and Class members received the Safety Recall Notices from Defendants and brought their vehicles in for the Recall Work they reasonably relied upon Defendants' representations and expected that the work would be performed in a good and workmanlike manner, that the replacement parts would be merchantable, that the replacement valve springs would be of an "improved design," that the Recall Work would correct the defective condition and eliminate the risk of the valve springs failing and causing the engine to malfunction and/or causing the engine to stall and increase the risk of a crash, and that the Recall Work would not increase the likelihood of engine failure and the safety risks associated with engine stalling and failure, including the risk of engine fires.

48.     Plaintiff and Class members operated their Class Vehicles in a reasonably foreseeable manner and as the Class Vehicles were intended to be used.

49.     Plaintiff and the Class members have suffered ascertainable losses as a result of Defendants' breach of express and implied warranties, negligence, negligent misrepresentations and from detrimentally relying upon Defendants' promises and representations regarding the Recall Work.

50.     Neither Defendants nor any of their agents, distributors, dealers, or other representatives informed Plaintiff and Class members of the insufficient and improper recall remedy or the increased safety hazard and risk of loss resulting from the Recall Work.

51.     At all relevant times, Defendants acted through their authorized agents and representatives in their dealer networks while performing activities associated with advertising, marketing, selling Class Vehicles and providing the Safety Recall Notices and associated repair work, warranties, warranty repairs, and dissemination of technical information and mechanic training materials associated with the Recall Work.

52.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, recalled and/or warranted the Class Vehicles under the Toyota and Subaru brand names throughout the United States.

53.     Upon information and belief, the Defendants jointly developed the recall remedy and disseminated or directed the dissemination of the Safety Recall Notices to Plaintiff and the Class members.

54.     Upon information and belief, the Defendants jointly devised the Recall Work to be performed and created and disseminated the Recall Work instructions, directions, technical information and materials and supplied the replacement valve springs to their employees, agents and authorized dealers who served as their agents for the Recall Work.

11

55.    Defendants represent in the Safety Recall Notices that repairs will take up to one and one-half business days to complete.  See Exs. A and B.   Thus, Plaintiff and Class members have a significant loss of use of their Class Vehicles while the Recall Work is or was being performed.

## V.        CLASS ALLEGATIONS

56.    Plaintiffs bring this action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and/or (b)(3), on behalf of the following Classes for the maximum time period allowable by law:

> **Nationwide Class:** All persons or entities who purchased or leased a Class Vehicle in the United States and (i) had the Recall Work performed and suffered engine failure afterwards or (ii) who own or lease a Class Vehicle and had the Recall Work performed or still need to have the Recall Work performed.

> **Texas Class:** All persons or entities who purchased or leased a Class Vehicle in Texas and (i) had the Recall Work performed and suffered engine failure afterwards or (ii) who own or lease a Class Vehicle and had the Recall Work performed or still need to have the Recall Work performed.

The Nationwide Class and the Texas Class are referred to collectively as the "Classes."

57.    Plaintiff reserves the right to revise the definition of the Classes based upon subsequently-discovered information and reserve the right to establish sub-classes where appropriate.

58.    The Classes exclude Defendants and any entity in which Defendants have a controlling interest, as well as their officers, directors, legal representatives, successors, and assigns. The Classes also exclude government entities and judicial officers that have any role in adjudicating this matter.

59.    The Classes are each so numerous that joinder of all members is impracticable.

12

60.        Plaintiff believes that there are far in excess of 100 class members in Texas and tens of thousands of members of the Nationwide Class throughout the United States.

61.        A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

62.        Plaintiff's claims are typical of the claims of the Classes Plaintiff seeks to represent.

63.        As alleged herein, Plaintiff and Class members sustained damages arising out of the same actions and conduct of Defendants.

64.        Common questions of law and fact exist to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

- o   Whether Defendants made and breached express warranties concerning the Recall Work;

- o   Whether Defendants made and breached implied warranties concerning the Recall Work;

- o   Whether Defendants negligently misrepresented to their authorized dealers the instructions and facts necessary for properly performing the Recall Work;

- o   Whether Defendants negligently misrepresented in the Safety Recall Notices the remedies and benefits to be provided by the Recall Work;

- o   Whether Plaintiff and the members of the Classes relied to their detriment upon the Safety Recall Notices;

- o   Whether Defendants should accept responsibility for engine failures and damages arising as a result of the Recall Work;

- o   Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

65.        Plaintiff is willing and prepared to serve the Classes in a representative

capacity with all the obligations and material duties necessary. Plaintiff will fairly and adequately represent and protect the interests of the Classes and has no interests adverse to or in conflict with the interests of any of the other members of the Classes.

66.     Plaintiff's interests are co-extensive with and not antagonistic to those of absent members within the Classes. Plaintiff will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

67.     Plaintiff has engaged the services of the undersigned counsel. Counsel are experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and absent members of the Classes.

68.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69.     The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

70.     The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

71.     The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes, or, if such notice is not practicable, by the best notice practicable under the circumstances including, amongst other things, email, publication in major newspapers, and the internet.

## VI.    CLAIMS FOR RELIEF

**COUNT ONE**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

72.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

73.     Plaintiff brings this count on behalf of himself and the Texas Class and/or the National Class against the Defendants.

74.     Plaintiff and members of the Classes had the Recall Work performed by Defendants' employees and/or authorized agents. At all relevant times, the Defendants were the manufacturers, distributors, warrantors, and/or sellers of the replacement parts installed as part of the Recall Work.

75.     The Defendants are and were at all relevant times a merchant and seller of motor vehicles and parts within the meaning of the Uniform Commercial Code.

76.     Defendants impliedly warranted that the replacement parts installed as part of the Recall Work were in merchantable condition and fit for the ordinary purpose for which the components and the Class Vehicles are used.

77.     The replacement parts installed as part of the Recall Work were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable operation of the Class Vehicles.

78.     The Defendants received notice of the defective replacement parts installed as part of the Recall Work by numerous consumer complaints made to dealers and distributors, and/or other public complaints and through its own testing and investigations. Affording the Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because the Defendants knew of and concealed the defective

Recall Work, and, upon information and belief, refused to repair or replace the defects and resulting damage within a reasonable time.

79.        As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

80.        Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable. A gross disparity in bargaining power and knowledge existed between Defendants and members of the Classes. Defendants knew or should have known that the replacement parts installed during the Recall Work were defective and posed a serious safety hazard.

**COUNT TWO**
**BREACH OF IMPLIED WARRANTY**
**OF GOOD AND WORKMANLIKE SERVICE**

81.        Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

82.        Plaintiff brings this count on behalf of himself and the Texas Class and/or the National Class against the Defendants.

83.        Plaintiff and members of the Classes had the Recall Work performed by Defendants' employees and/or authorized agents. At all relevant times, the Defendants and their authorized agents were the warrantors and sellers of the services performed as part of the Recall Work within the meaning of the Uniform Commercial Code.

84.        Defendants impliedly warranted that the Recall Work would be performed in a good and workmanlike manner and would safely and properly remedy the valve spring defect and associated safety hazards.

85.        The Recall Work was not performed in a good and workmanlike manner and

is resulting in increased risk of loss and harm.

86.     The Defendants received notice of the defective Recall Work by numerous consumer complaints made to dealers and distributors, and/or other public complaints and through its own testing and investigations. Affording the Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because the Defendants knew of and concealed the defective Recall Work, and, upon information and belief, refused to repair or replace the defects and resulting damage within a reasonable time.

87.     As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

88.     Any attempt by Defendants to disclaim or limit the implied warranty of good and workmanlike service vis-à-vis consumers is unconscionable and unenforceable. A gross disparity in bargaining power and knowledge existed between Defendants and members of the Classes. Defendants knew or should have known that the Recall Work was not good, safe and proper and that it created an increased risk of loss and harm.

## COUNT THREE
## BREACH OF EXPRESS WARRANTY

89.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

90.     Plaintiff brings this count on behalf of himself and the Texas Class and/or the National Class against the Defendants.

91.     Defendants sent the Safety Recall Notices to Plaintiffs and the Classes.

92.      In the Safety Recall Notices, the Defendants expressly warranted and guaranteed that the defective valve springs would be replaced free of charge with new ones

of an improved design and that the Recall Work will remedy the defective valve springs and any associated safety risk.

93.     Plaintiff and members of the Classes had the Recall Work performed by Defendants' authorized agents. At all relevant times, the Defendants were the manufacturers, distributors, warrantors, and/or sellers of the replacement parts and services provided as part of the Recall Work.

94.     The Defendants are and were at all relevant times a merchant and seller of motor vehicles and parts and services within the meaning of the Uniform Commercial Code.

95.     Upon information and belief, the replacement parts provided as part of the Recall Work were not of an improved design and/or the services performed as part of the Recall Work did not remedy the defective valve springs and associated safety risks.  To the contrary, the Recall Work is increasing the risk of harm and loss.

96.     The Defendants received notice of the defective replacement parts installed and services performed as part of the Recall Work by numerous consumer complaints made to dealers and distributors, and/or other public complaints and through its own testing and investigations. Affording the Defendants a reasonable opportunity to cure their breach of express warranties would be unnecessary and futile here because the Defendants knew of and concealed the defective Recall Work, and, upon information and belief, refused to repair or replace the defects and resulting damage within a reasonable time.

97.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

**COUNT FOUR**
**NEGLIGENT MISREPRESENTATION**

98.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they

18

were fully set forth herein.

99.    Plaintiff brings this count on behalf of himself and the Texas Class and/or the National Class against the Defendants.

100.    Defendants sent the Safety Recall Notices and Bulletins to Plaintiffs and the Classes.  Upon information and belief, Defendants drafted these documents and/or provided the information material to these documents.

101.    Defendants were obligated to exercise due care in drafting and disseminating the information in these documents.

102.    By way of the Safety Recall Notices and Bulletins, and/or by other means of communication, Defendants negligently misrepresented to Plaintiff that the Recall Work would remedy the valve spring defect and any attendant safety hazards.  Defendants omitted any risks to the vehicle that could result from the Recall Work.

103.    It was foreseeable that Plaintiff and Class members would be harmed by the failure of Defendants to exercise reasonable care in making the above-referenced representations and omissions.

104.    As a result of Defendants' negligent misrepresentations and omissions, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

**COUNT FIVE**
**NEGLIGENCE**

105.    Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

106.    Plaintiff brings this count on behalf of himself and the Texas Class and/or the National Class against the Defendants.

107.    Upon information and belief, Defendants drafted and sent the Safety Recall

Notices and Bulletins with repair instructions, included within Exhibits A and B, to their authorized dealers and other employees and agents.  Defendants also sent the Safety Recall Notices and Bulletins to Plaintiff and the members of the Classes.

108.    Defendants owed a duty to the Plaintiff and the Class members to exercise reasonable care in implementing the Recall and in overseeing, supervising, training, directing and/or instructing their authorized dealers and other employees and agents with regard to the Recall Work.

109.    It was foreseeable that Plaintiff and Class members would be harmed by the failure of Defendants to exercise reasonable care in implementing the Recall and in overseeing, supervising, training, directing and/or instructing their authorized dealers and other employees and agents with regard to the Recall Work.

110.    Defendants breached their duty of care, and as a result, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

**COUNT SIX**
**DETRIMENTAL RELIANCE**

111.    Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

112.    Plaintiff brings this count on behalf of himself and the Texas Class and/or the National Class against the Defendants.

113.    In providing the Safety Recall Notices and Bulletins and information regarding the Recall Work to Plaintiffs and the members of the Classes, Defendants made promises that the Recall Work would properly correct the valve spring defect and eliminate the risk of engine failures and associated safety hazards concerning the valve springs in the Class Vehicles.

114.    Defendants represented that the Plaintiff and members of the Classes were at risk if they did not have the Recall Work performed.

115.    Plaintiff and the members of the Classes reasonably and substantially relied upon the promises of Defendants to their detriment when they brought their Class Vehicles in for the Recall Work.

116.    Reliance by Plaintiff and the members of the Classes was foreseeable to the Defendants and injustice and inequities can only be avoided by restoring their losses resulting from their reliance upon Defendants' promises and the faulty Recall Work.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Classes, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Classes and Plaintiff's counsel as counsel for the Classes;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the conduct and practices alleged above and requiring Defendants to accept full liability and responsibility for the defective and inadequate Recall Work and resulting losses, inequities and damages;

C.    An order awarding costs, restitution, disgorgement, compensatory damages and out-of-pocket expenses in an amount to be determined at trial;

D.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.        An award of costs, expenses, and attorneys' fees as permitted by law; and

F.        Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims in this action.

Respectfully submitted,

Date: September 24, 2019

*/s/ Katrina Carroll*
Katrina Carroll
NJ ID No. 026212000
**CARLSON LYNCH LLP**
111 W. Washington Street Ste. 1240
Chicago, IL 60602
Tel: 312.750.1265
kcarroll@carlsonlynch.com

Edwin J. Kilpela, Jr
James P. McGraw, III
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412.322.9243
Fax: 412.231.0246
ekilpela@carlsonlynch.com
jmcgraw@carlsonlynch.com

Peter A. Muhic
NJ Bar No. 041051994
**LEVAN LAW GROUP LLC**
One Logan Square — 27th Floor
Philadelphia, PA 19103-693
TEL: 215.561.1500
FAX: 215.827.5390
pmuhic@levanlawgroup.com

Jonathan M. Jagher
Kimberly A. Justice
**FREED KANNER LONDON
& MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
jjagher@fklmlaw.com
kjustice@fklmlaw.com


William H. London
Douglas A. Millen
**FREED KANNER LONDON
& MILLEN, LLC**
2201 Waukegan Road, #130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
blondon@fklmlaw.com
dmillen@fklmlaw.com

David P. McLafferty
**MCLAFFERTY LAW FIRM, P.C.**
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 940-4000
Facsimile: (610) 940-4007
dmclafferty@mclaffertylaw.com

Richard R. Gordon
**GORDON LAW OFFICES, LTD.**
111 West Washington Street
Suite 1240
Chicago, Illinois 60602
Telephone: (312) 332-5200
Facsimile: (312) 242-4966
rrg@gordonlawchicago.com

*Attorneys for Plaintiffs and the Proposed Classes*